## FARMER *v.* FIRST NATIONAL BANK OF MALVERN.

### Opinion delivered January 25, 1909.

1. BILLS AND NOTES—NEGOTIABLE CHARACTER.—A promissory note for the payment of a certain sum of money at a designated time is a negotiable instrument, though it recites on its face that a chattel mortgage has been executed as collateral security and promises to have such chattels insured as additional security. (Page 134.)

2. SAME—EXTENSION OF TIME OF PAYMENT AS CONSIDERATION.—Extension of the time of payment of an existing debt is a sufficient consideration to constitute the transferee of a promissory note as collateral security for such debt a holder for value. (Page 135.)

3. SAME—DEFENSE.—Where a negotiable note was transferred before maturity to an innocent purchaser, the maker cannot defend on the ground that he held an account against the payee for a like amount. (Page 135.)

4. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A chancellor's finding of fact will not be set aside on appeal unless it is clearly against the preponderance of the evidence. (Page 136.)

Appeal from Union Chancery Court; *E. O. Mahoney,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

Jesse M. Grubbs was indebted to appellee in a sum greater than one thousand dollars. The indebtedness was past due, and in consideration of an extension of the time of payment Grubbs transferred to the Hot Springs County Bank, which was afterwards merged into and became appellee, the following note:
"$1,000.

"On or before August the 1st, 1904, I promise to pay to Jesse M. Grubbs or order the sum of one thousand dollars with ten per cent. interest from date until paid for value received of him. This note is given for borrowed money, and is secured by a mortgage on this date on the following personal property, to-wit: (describing it.) The appraisement of property is waived in the face of said mortgage, and it includes any other indebtedness that may be due from the maker of this note to the said Jessse M. Grubbs, and the undersigned agrees to have said property insured in some good insurance company in the sum of $1,000 to protect the holder of this note.

"This 1st day of April, A. D. 1904.

"P. B. Farmer,

Indorsed:   "Pay to the order of Hot Springs County Bank.
                                        "J. M. Grubbs."

Appellee brought suit in the chancery court of Union County, alleging that the indebtedness of Grubbs had not been paid, that the above note had "been assigned to appellee before maturity and for value," that the note was secured by mortgage on certain personal property, which is made an exhibit to appellee's complaint. The mortgage was recorded December 7, 1904.

The complaint then set up that P. B. Farmer, the maker of the note, had fraudulently executed a deed of trust on the same property included in the mortgage which appellee held, in favor of his brother, R. E. L. Farmer, to secure an alleged indebtedness of P. B. Farmer to him in the sum of $1,285. The mortgage of P. B. Farmer to R. E. L. Farmer is made an exhibit, and shows that it was executed November 2, 1904, and the alleged indebtedness it was given to secure was due January 1, 1905. The complaint then further alleges that Guy Murphy was named as trustee in the pretended deed of trust, that he had moved away, that P. B. Farmer had pretended to abandon the property, and that R. L. Floyd was acting as trustee, and that he was proceeding to sell the property under the alleged authority of the pretended deed of trust in favor of R. E. L. Farmer. It alleged that P. B. Farmer had not abandoned the property, that Floyd was not a substituted trustee, and that the whole scheme was a fraud on appellee.

The prayer of the complaint was for judgment on the note and for foreclosure of the mortgage. J. M. Grubbs and P. B. and R. E. L. Farmer and R. L. Floyd were made defendants. P. B. and R. E. L. Farmer filed separate answers. P. B. Farmer admitted the execution of the note and mortgage, but denied that same had been transferred to appellee before maturity and for value, and set up a plea of payment, and denied all the other allegations of the complaint. Each answer alleged the *bona fides* of the deed of trust to R. E. L. Farmer, and the latter prayed that his deed of trust be given precedence. Floyd answered, saying that he was a substituted trustee, and was acting in good faith in foreclosing the deed of trust to R. E. L. Farmer, and disclaimed any further interest. There was an agreement pend-

ing the litigation that the property named in the mortgage should be sold by a special commissioner, and the proceeds should be held to await the final result of the litigation which was accordingly done.

The cause was heard upon depositions and the pleadings and exhibits. The chancellor found that the note before maturity thereof was assigned for a valuable consideration to the Hot Springs County Bank, which had become the First National Bank of Malvern (appellee); that the note and mortgage of P. B. Farmer to his brother, R. E. L. Farmer, was a fraud in its inception, being solely for the purpose of defeating the rights of appellee, and that same was therefore void. The court further found that the matter of the account between P. B. Farmer and Grubbs was not before it properly for adjustment. The court rendered a judgment against Grubbs and P. B. Farmer in favor of appellee for the amount of the note with interest, and directed that the proceeds of the sale of the property under the mortgage be paid to appellee.

P. B. and R. E. L. Farmer appeal.

*R. L. Floyd,* for appellant.

The note was not negotiable; it and the mortgage to which it refers, the law presumes, evidence but a single contract. And certainly the collateral undertaking expressed in the note, "to have said property insured, in some good insurance company," is not negotiable, and destroys the negotiability of the entire instrument. 9 Cyc. 580; 7 Cyc. 956; 4 Am. & Eng. Enc. of L. (2d Ed.), 124; Norton, Bills & Notes (2d Ed.), 49.

*E. H. Vance, Jr.,* for appellee.

1. The question of negotiability of the note was not raised by the pleadings and proof, and will not be considered here. 83 Ark. 10; 84 Ark. 316; 83 Ark. 260; 77 Ark. 103. Notes and mortgages are assignable under the statute. Kirby's Digest, § 509.

2. The chancellor's finding, though persuasive only, will not be disturbed unless contrary to the clear preponderance of the evidence. 74 Ark. 605; 68 Ark. 134; *Id.* 314; 77 Ark. 305.

WOOD, J., (after stating the facts.) 1. The note in suit was

a negotiable instrument. The general rule is that "it is essential to the negotiability of a note that it purport to be only for the payment of money, for, if any other agreement of a different character be engrafted upon it, it becomes a special contract clogged and involved with other matters and loses thereby its character as a commercial instrument." But the general rule is subject to the qualification that if the superadded agreement does not impair the certainty of the promise to pay the certain amount named but only facilitates the means of its collection, it does not in any degree destroy the negotiability of the instrument, but is embodied in the contract of all the parties, and passes as an incident of the paper itself to every holder." 1 Daniel, Neg. Ins. 59, and cases cited in note.

"The point to determine is," says Mr. Norton, "whether such agreement is a part of or necessary to the fulfillment of the promise or order. If it is not, it does not destroy the instrument's negotiability." Norton on Bills and Notes, p. 48. See *Wise v. Charlton,* 4 Ad. & E. 786, usually referred to as a leading authority. Here the recitals of the fact of the mortgage as a collateral to the note, and of the promise to have the property insured as an additional security, do not in any wise impair the obligation to pay the certain amount in money named. It does not tend to impede, but rather to facilitate, its collection. The promise to pay a certain sum of money at a certain time remains absolute. The collateral contract does not affect the principal obligation, except to aid in its fulfillment. The note therefore remains a "courier without luggage." *Arnold* v. *Rock River Valley Union R. Co.,* 5 Duer (N. Y.) 207; *Towne* v. *Rice,* 122 Mass. 67; *Valley Bank* v. *Crowell,* 148 Pa. St. 284.

The proof shows that the assignment of the note was in consideration of the extension of the time of payment of an existing indebtedness of the payee to the appellee, which indebtedness exceeded in amount the note transferred. This constituted appellee a holder for value. *Bank of Commerce* v. *Wright,* 63 Ark. 604. Appellee being under the evidence an innocent holder of the note for value before maturity, the question as to whether or not P. B. Farmer, the payor of the note, had paid the same by a certain offset of account which he claimed against Grubbs, the payee, is eliminated. The court properly held that the question

of account between the payor and payee under these circumstances was not before it.

2.  The question as to whether the deed of trust from P. B. Farmer to his brother was for the sole purpose of defrauding appellee was one of fact.  It could serve no useful purpose here to set out and discuss the evidence bearing upon this issue.  We are of the opinion, after a careful consideration of it, that the conclusion of the chancellor was not clearly against the preponderance of the evidence.  *Letchworth* v. *Vaughan,* 77 Ark. 305; *Brown* v. *Wyandotte & S. E. Ry. Co.,* 68 Ark. 134; *Mooney* v. *Tyler,* 68 Ark. 314, and other cases cited in these.

Finding no error, the decree is in all things affirmed.