## EMPIRE GAS & FUEL CO. v. ALLEN et al.

(Circuit Court of Appeals, Fifth Circuit. November 27, 1923. Rehearing
Denied December 24, 1923.)

No. 4155.

1. **Principal and agent ⬤⇒54—General agent has implied authority to delegate power to perform ministerial acts.**

A general agent has implied authority to delegate performance of ministerial acts, not requiring the exercise of judgment and discretion, to a subagent.

2. **Principal and agent ⬤⇒54—Approval of formal execution of lease held ministerial act, which could be delegated.**

A general agent of defendant for the procuring of leases throughout a large territory, who had contracted with plaintiffs for a lease and had approved the title to the property, *held* to have authority to authorize a resident subordinate, in his absence, to close the transaction on delivery to him of a properly executed lease.

In Error to the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Action at law by C. E. Allen and others against the Empire Gas & Fuel Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Edwin T. Phillips and David B. Trammell, both of Fort Worth, Tex. (H. O. Caster and R. D. Garver, both of Bartlesville, Okl., T. F. Garver, of Topeka, Kan., and Phillips, Trammell & Chizum, of Fort Worth, Tex., on the brief), for plaintiff in error.

W. M. Short, S. B. Cantey, and Wm. D. Smith, all of Fort Worth, Tex., and E. B. Ritchie, of Mineral Wells, Tex. (Alfred McKnight, of Fort Worth, Tex., on the brief), for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is a writ of error from a judgment of the District Court for the Northern District of Texas, in favor of the defendants in error (plaintiffs in the District Court) and against the plaintiff in error (defendant in the District Court), for the amount of a bonus, with interest, which it was alleged the defendant contracted to pay the plaintiffs for the execution and delivery of a lease on certain lands owned by the plaintiffs. The right of recovery depends upon a showing by the plaintiffs of an executed agreement, which included a showing of a delivery and acceptance of the lease. In the absence of a completed transaction, the statute of frauds would have barred a recovery. If the plaintiffs established a delivery and acceptance of the lease, the statute would not apply. The completion of the transaction depended upon (1) whether the evidence established a delivery of the lease by C. E. Allen, one of the plaintiffs, to Paul P. Scott, an agent of the defendant; (2) whether C. L. Ford, another agent of defendant, had authority to make the contract for defendant, and also authority to delegate to Scott the power to accept the lease, and so obligate the

defendant to pay the bonus. The burden was on the plaintiffs to establish these two propositions. The case was tried by the District Judge without a jury, and he must have found these propositions in favor of the plaintiffs, as he rendered judgment in their favor. If there was evidence to support the findings of the District Judge, we are not concerned with its weight or preponderance.

1. As to whether the plaintiff C. E. Allen made delivery of the lease to Paul P. Scott, so as to pass title to it and complete the transaction: This depended upon a showing of mutual intention upon the part of Allen to part with title, when he surrendered possession of the lease, and on the part of Scott to receive the lease for the purpose of closing the transaction and vesting his principal with title to it. The contention of the defendant was that the lease was turned over to Scott for examination and approval by his principal at Bartlesville, and that the draft, drawn by Allen, with the lease attached, was a means of permitting inspection and approval by the proper officer of the defendant at Bartlesville, before payment was made and the trade completed. The contention of the plaintiffs was that the lease was tendered for the purpose of completing the trade; and that the bonus in money was demanded of Scott contemporaneously; that Scott stated that payment through the medium of the draft was necessary, because defendant's banking was done at Bartlesville, and not at Fort Worth, where the lease was tendered; that Scott stated that the transaction was closed by the delivery of the lease to him, and that the draft for the bonus was the same as money. There was evidence both of witnesses and circumstances in support of each contention. The record is sufficient to justify the conclusion reached by the District Judge that there was a legal delivery of the lease.

2. There was also ample evidence introduced on the trial and shown by the record to justify the court's finding that C. L. Ford, the agent of defendant, who negotiated the trade with Allen for it, had authority to make such a contract on defendant's behalf. If Ford had completed the trade himself, there would be no remaining question to be considered. Ford was absent from Fort Worth, however, when Allen presented the executed lease at the defendant's office there. Scott acted for the defendant in closing up the trade by acceptance of the lease and agreeing to pay the bonus, according to the evidence of plaintiffs. There was ample evidence tending to show that Ford anticipated being absent from Fort Worth when the trade came to be closed, and had instructed Scott to close the trade, when Allen tendered the lease properly executed. The evidence shows that Scott had acted with Ford in the previous negotiation; that he was as fully informed as was Ford concerning the details of the trade; that Ford, while absent, had wired Scott to procure a letter from the Texas & Pacific Coal & Oil Company as to the location of a well agreed to be drilled by it, and which was a term of the agreement to purchase the lease, and that Ford had seen and approved the letter. There was no detail of the trade that had not been presented to Ford and agreed to by him. All that was left to be decided by Scott was whether the lease was properly executed by the lessors.

It was suggested on the hearing that the value of the lease largely depended upon the outcome of a well that was being drilled by the Texas & Pacific Coal & Oil Company, the value of which might be determined before the trade was closed, and that Ford had no right to delegate to Scott his authority to act for his principal in making the determination. However, the record shows that Ford made no such delegation to Scott. Scott was not told by Ford to use his judgment with reference to withdrawing from the trade, if the well turned out badly. Ford reserved to himself the right to determine whether the lease should be rejected for any such reason. He considered that he had closed the trade before he left Fort Worth, and that nothing was left to be done except to approve the papers, and this is all he delegated Scott to do. If there was to be a withdrawal from the trade, Ford was to determine the wisdom of it, not Scott. Ford evidently intended to communicate any change of mind on his part to Scott. In the absence of additional instructions, Scott's duty was to accept a properly executed lease and arrange payment of the bonus. This course of business is shown by the fact that Ford wired Scott, after leaving Fort Worth, not to close the trade until the location of a well to be drilled was made satisfactory. Scott thereupon procured and furnished Ford with a letter showing the location, and Ford communicated his approval to Scott. This shows that Ford reserved all authority relating to the modification or rejection of the trade and did not delegate it to Scott. It is significant that, on the question of authority, the rejection of the trade by the defendant's executive at Bartlesville was not placed upon the ground of any want of authority in Ford either to make the trade or to authorize Scott to close it, but upon an alleged defect in plaintiffs' title to the leased land.

[1] The rule as to the power of delegation is that a general agent has implied authority to delegate the performance of ministerial acts, not requiring the exercise of judgment and discretion, to a subagent, and that express authority is not essential. Insurance Co. v. Thornton, 130 Ala. 222, 30 South. 614, 55 L. R. A. 547, 89 Am. St. Rep. 30; Deitz v. Providence-Washington Insurance Co., 33 W. Va. 526, 11 S. E. 50, 25 Am. St. Rep. 908; Wright v. Isaacks, 43 Tex. Civ. App. 223, 95 S. W. 55; L. & N. R. R. Co. v. Tift, 100 Ga. 86, 27 S. E. 765; White-Wilson-Drew Co. v. Egelhoff, 96 Ark. 105, 131 S. W. 208.

[2] If Ford was a general agent of defendant, and if the passing upon the execution of the lease was a ministerial act, the delegation to Scott to close the trade was binding on the defendant. The evidence tended to show that the defendant was a large corporation, doing business in five or six states; that at the time of the transaction in controversy a large sum had been appropriated by it for the purchase of leases in Louisiana and Texas; that Ford was the superintendent of the department that made such purchases, was required to cover a large area in the performance of his duties, and had 15 or 20 subordinates under him, among them Scott. If he was in charge of the department of the defendant that was engaged in negotiating and purchasing leases, and if its operations in that respect were of the magnitude indicated, Ford would be the general agent of the defendant for

the transaction of its leasehold business. If so, he had the implied authority to delegate the performance of ministerial acts to subagents.

The remaining question is whether passing upon the execution of the lease, after the trade had been negotiated and the title approved, was a ministerial act. In view of the situation of the defendant as shown by the record, the extent of its leasing business, the nature of the respective duties of Ford and Scott, the course of business as illustrated by the previous steps taken in this transaction, and the need shown, if the business of the department was to be done efficiently, in view of Ford's frequent and continued absence from Fort Worth, to delegate the performance of details to a person resident in Fort Worth, it is clear that authority should be implied in Ford to make delegations of authority such as the evidence tends to show was made to Scott in the matter in controversy.

The defendant complains of the admission of certain evidence over its objection and exceptions, particularly Allen's evidence that he turned the lease over to Scott. This would imply no more than a physical delivery of the lease to Scott, which was not disputed. It does not serve to illustrate the intent. None of the evidence objected to, even if admissible, is important enough to have affected the result.

We find no prejudicial error in the record, and the judgment of the District Court is affirmed.